## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

—————————————————————————
                    )

**Trevor Howell,**               )

                    )

        **Plaintiff,**       )

                    )

        **v.**               )        **Civil Action No. 09-11407-DJC**

                    )

**Michael O' Malley et al.,**    )

                    )

        **Defendants.**     )

—————————————————————————)

## MEMORANDUM AND ORDER

CASPER, J.                                August 12, 2011

### I.     Introduction

Plaintiff Trevor Howell ("Howell"), currently an inmate at the North Central Correctional Institution ("NCCI Gardner"), was previously incarcerated with the Massachusetts Department of Correction ("DOC") at MCI-Norfolk in Norfolk, Massachusetts.  Howell brings this action against the DOC and numerous correction officers alleging violations of his constitutional rights and state and federal law in connection with disciplinary proceedings brought against him when he was confined at MCI-Norfolk.  Defendants have now moved to dismiss under Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).  For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

### II.     Burden of Proof and Standard of Review

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "To survive a motion to dismiss, this short, plain

statement must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' and allege 'a plausible entitlement to relief.'" Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007)). The Court "accept[s] as true all well pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff[.]" Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and citations omitted). Although a plaintiff's *pro se* status does not excuse a failure to comply with the Federal Rules of Civil Procedure, McNeil v. United States, 508 U.S. 106, 113 (1993), "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

## III.    Factual Background

In considering a motion to dismiss, the Court must accept non-conclusory factual allegations in the complaint as true, Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011), and does so here. On February 10, 2008, Howell was interviewed by Defendant Michael O'Malley ("O'Malley) regarding two anonymous notes containing inappropriate and offensive comments directed at correction officer Defendant Yolene Wilson ("Wilson") and left on a door for her to find.

(Compl. ¶¶ 18, 25).[1]   Howell denied any involvement in or knowledge of the incident.  (Compl. ¶ 19).   Later that day, Howell was sent to the prison's segregation unit and placed on "pending investigation" status.  (Compl. ¶ 19).  O'Malley and Defendant Donald Mahoney ("Mahoney") questioned Howell about his involvement and knowledge regarding the notes.  (Compl. ¶ 20). Howell claims that during such questioning, O'Malley and Mahoney attempted to "coerce him into becoming [their] informant" and told him that if he did not agree to be their informant, his "life was going to get worse for him."  (Compl. ¶ 21).  Howell further claims that O'Malley and Mahoney stated that if he did not "play ball with them and insisted he knew nothing or who was responsible for the writing of the notes there will be action taken" which "left [Howell] in great fear and concern about their threat to make his life worse . . . ."  (Compl. ¶ 22).[2]

One month later, on March 6, 2008, Howell was provided with a disciplinary report. (Compl. ¶ 23).  The report stated that in the late afternoon of February 10, 2008, Howell and another inmate attached two anonymous notes, containing inappropriate and offensive comments directed towards Wilson, to a tier door in such a manner that Wilson would discover them while securing that door in accordance with count procedures.  (Compl. ¶ 25).  The report further stated that Howell had

---

[1] For the purposes of the Memorandum and Order, the parties' filings referenced herein shall be abbreviated as follows:  Howell's second amended complaint ("Compl."); Defendants' memorandum of law in support of their second motion to dismiss ("Def. Memo"); and Howell's opposition to Defendants's second motion to dismiss ("Pl. Opp.").

[2] On April 18, 2008, Howell filed a grievance against O'Malley and Maloney complaining about their "coercion and threats" made to him during this interview.  (Compl. ¶ 70).  The matter was forwarded to the chief investigating officer for the DOC at the time, Defendant John McLaughlin ("McLaughlin"), and referred to internal affairs. (Compl. ¶¶ 71, 72).  Three days after filing a complaint against O'Malley and Maloney, Howell wrote a letter to the acting Deputy Superintendent at MCI-Norfolk, Defendant David J. Sullivan, asking Sullivan to investigate the "false allegations against [Howell]."  (Compl. ¶ 73).

been interviewed and provided false and misleading information to the correction officers as to his whereabouts at the time of the incident and his participation in the incident. (Compl. ¶ 26). The report explained that although Howell claimed that he was in the inmate dining area of the unit when the incident occurred, the interview process revealed that such statement was inaccurate. (Compl. ¶ 26). Two days after receiving the report, Howell was removed from "pending investigation" status and placed on "awaiting action" status. (Compl. ¶ 27).

Two months later, on May 16, 2008, an initial disciplinary hearing was held before officer Defendant David. W. Malone ("Malone"). (Compl. ¶ 29). Prior to the hearing, Howell spoke to Defendant Donna J. Greer ("Greer"), the disciplinary officer, about the disciplinary report. (Compl. ¶ 28). Howell expressed to Greer that he had no knowledge of the incident and did not participate in it. (Compl. ¶ 28). In response, Greer allegedly stated, "You know I half (sic) to stick with my peeps. I'm sorry but I can't go against them." (Compl. ¶ 28).

Before the hearing, Malone did not address Howell's request for certain witnesses to appear at the hearing, namely Wilson and Defendant Donald J. Sullivan, and as a result, neither witness testified at the hearing. (Compl. ¶¶ 30, 83). Malone denied Howell's requests for fingerprints, a video tape and an unredacted copy of the investigative summary report, citing potential safety and security concerns. (Compl. ¶ 31). Howell was represented by counsel and pleaded not guilty at the hearing. (Compl. ¶¶ 29, 32). After the hearing, Howell was found guilty of lying to or providing false information to a staff member, use of obscene, abusive or insolent language or gesture and conduct which disrupts the normal operation of the facility or unit. (Compl. ¶ 67). He was sanctioned with ten days disciplinary detention, forty days loss of canteen privileges and sixty days with no telephone privileges. (Compl. ¶ 67). Howell subsequently appealed. (Compl. ¶ 68). On

June 27, 2008, Superintendent of MCI-Norfolk, Defendant Luis A. Spencer ("Spencer"), allowed Howell's appeal on the grounds that Howell's request for a witness had not been addressed prior to or during the hearing and ordered that Howell receive a new disciplinary hearing. (Compl. ¶¶ 120, 123, 127, 152).

After the re-hearing, held on August 7, 2008 before officer Robert J. Almeida, Howell was found guilty of the same offenses and sanctioned to ten days of disciplinary detention, seventy days of loss of canteen privileges and thirty days of no telephone privileges. (Compl., Ex. 10, Results of Appeal listing sanctions).[3]   Howell's appeal was denied by Spencer on September 25, 2008. (Compl. ¶ 173).

## IV.    Procedural History

On August 26, 2009, Howell filed a complaint alleging fourteen causes of action against numerous Defendants.  (D. 1).  After Defendants moved to dismiss on April 20, 2010, Howell sought leave to amend his complaint which the Court granted.  (D. 25, 33, docket entry 5/6/10).  The Court denied Defendants' first motion to dismiss without prejudice to renewal after the amended complaint was filed.  (docket entry 5/6/10).   After Howell filed his amended complaint on June 17, 2010, (D. 35), Defendants moved for a more definite statement which the Court allowed. (D. 36, docket entry 7/13/10).

On October 4, 2010, Howell filed his second amended complaint ("complaint") alleging

---

[3]The Court's consideration of the DOC's MCI-Norfolk Results of Appeal document is appropriate without converting the motion to dismiss into one for summary judgment in light of Howell referencing the document in and originally attaching it to the complaint.  See, e.g., Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) (recognizing that a court's consideration of "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint" does not convert a motion to dismiss to one for summary judgment) (citing cases).

violations of his rights under the Fifth and Fourteenth Amendment of the Constitution as well as 42 U.S.C. § 1983 (Count I), violation of G.L. c. 265, § 21 (Count II), violations of the Code of Massachusetts Regulations, 103 C.M.R. 430.00 *et seq*., (Count III), and requesting declaratory judgment that the Defendants' conduct violated Howell's rights under state and constitutional law (Count IV), issuance of an order of contempt against Defendants (Count V) and money damages (Count VI). (D. 41).[4] Soon thereafter, Defendants filed a motion to strike the complaint and to compel Howell to comply with the Court's order allowing their motion for a more definite statement. (D. 42). Several months later, the Court granted Defendants' motion in part and ruled that all references to exhibits in the complaint be stricken from the complaint, paragraphs 177-196 be stricken entirely from the complaint and the exhibits be separated from the complaint. (D. 44). Defendants subsequently moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6). (D. 45). After Howell failed to respond within the required time period, the Court allowed him until March 15, 2011 to file an opposition. (D. 48). Howell requested an extension to file his opposition by March 30, 2011 (D. 49), which the Court granted. (docket entry 3/18/11). Notwithstanding, the

---

[4]Howell names the following Defendants in his complaint: Massachusetts Department of Corrections, Harold W. Clarke ("Clarke"), Luis A. Spencer ("Spencer"), Michael O'Malley ("O'Malley"), Donald Mahoney ("Mahoney"), Donna J. Greer ("Greer"), Yolene A. Wilson ("Wilson"), John McLaughlin ("McLaughlin"), Paul Oxford ("Oxford"), Sherry Elliot ("Elliot"), Donald J. Levesque ("Levesque"), Donald J. Sullivan ("Sullivan"), David W. Malone ("Malone"), Robert J. Almeida ("Almeida"), Cynthia Sumner ("Sumner") and "John Doe," all employees of the Department of Correction. Howell contends that the individually named defendants are liable in their official and individual capacities. However, Howell does not mention or allege any wrongdoing by Defendants Clarke, McLaughlin, Oxford, Elliot, Sumner or Levesque or the alleged "John Doe" in the body of the complaint. Thus, any assertions of liability against these defendants would be wholly unsupported and conclusory which cannot survive a motion to dismiss. See Iqbal, 129 S. Ct. 1949-50. As a result, the Court must dismiss at the outset all claims against Clarke, McLaughlin, Oxford, Elliot, Sumner, Levesque and "John Doe."

filing of Howell's opposition beyond that deadline, on April 8, 2011 (D. 50), the Court has considered the opposition in rendering this decision.

## V. Discussion

### A. Count I: Violation of the Fifth and Fourteenth Amendment and 42 U.S.C. § 1983

Read liberally, the complaint alleges in Count I that Howell was denied procedural due process with respect to the disciplinary report, subsequent disciplinary hearings and the "findings of guilty" after both hearings as well as the sanctions imposed thereafter, the re-classification of his status and transfer to NCCI Gardner. (Compl. ¶¶ 198-199).[5]

#### 1. Howell's Challenge Under the Fourteenth Amendment to the Disciplinary Hearings, Subsequent Sanctions and Disciplinary Report

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property." Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir. 1996). An inmate is entitled to the protection of procedural due process under the Federal and State Constitutions only if there is an existing liberty or property interest at stake. Sandin v. Conner, 515 U.S. 472, 484 (1995); Wilkinson, 545 U.S. at 221 (noting that "those who seek to invoke [the Fourteenth Amendment's] procedural protection must establish that one of these interests is at stake"). A protected liberty "interest [is] generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Only after the Court

_____

[5]The complaint alleges a violation of the Fifth Amendment, yet there is no indication of federal action in the complaint. The Fifth Amendment applies to actions of the federal government and not to private individuals or state or local governments. See Gerena v. Puerto Rico Legal Servs., 697 F.2d 447, 449 (1st Cir. 1983).

determines whether plaintiff has been deprived of a protected interest does it consider whether that deprivation was accomplished without due process of law.  Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008); Childers v. Maloney, 247 F. Supp. 2d 32, 36 (D. Mass. 2003).

### a.  Disciplinary Hearing and Subsequent Sanctions

Due Process Clause protections apply to Howell's disciplinary proceedings only if he was deprived of a protected liberty interest. See e.g., Sandin, 515 U.S. at 483-84.  It is well established that  the disciplinary sanctions underlying Howell's deprivation of due process claim -  ten days of disciplinary detention, seventy days of loss of canteen and thirty days with no telephone privileges - do not amount to an atypical and significant hardship to give rise to a protected liberty interest. See, e.g., Sandin, 515 U.S. at 484 (concluding that disciplining a prisoner for thirty days in segregated confinement did not present the type of atypical, significant deprivation to conceivably create a liberty interest); Schmitt v. Mulvey, No. 04-10717, 2006 WL 516755, at *3 (D. Mass. Mar. 1, 2006) (finding that the loss of television, radio and telephone privileges for a couple of months did not constitute an atypical or significant hardship constituting deprivation of due process); Wilson v. Dep't of Corr., 78 Mass. App. Ct. 1125, at *1 (2011) (concluding that loss of inmate's canteen privileges for thirty days violated no liberty interest and did not give rise to constitutional due process protections); Restucci v. Comm'r of Corr., 74 Mass. App. Ct. 1119, at *2 (2009) (holding that "loss of telephone and canteen privileges is not the sort of atypical and significant hardship in relation to ordinary prison life that warrant due process consideration"); Puleio v. Comm'r of Corr., 52 Mass. App. Ct. 302, 306-07 (2001), review denied, 435 Mass. 1105 (2001) (finding that ten days in segregation did not trigger liberty interest); Drayton v. Comm'r of Corr., 52 Mass. App. Ct. 135, 138-39 (2001) (finding that one year loss of visitation and transfer to higher security prison did not

constitute a protected liberty interest). "The Due Process Clause will not in most circumstances confer on an inmate a liberty interest in freedom from disciplinary procedures and heightened conditions of confinement." Balsavich v. Mahoney, No. 03-11344, 2004 WL 1497687, at *3 (D. Mass. July 6, 2004) (citing Sandin, 515 U.S. at 486). [6]

Similarly, the law is well-settled that "awaiting action" status does not constitute atypical or significant hardship giving rise to a protected liberty interest. See, e.g., Orwat v. Maloney, 360 F. Supp. 2d 146, 162 (D. Mass. 2005) (concluding that "awaiting action" status did not constitute an atypical, significant hardship giving rise to a protected liberty interest); Martin v. Clavin, No. 08-11971, 2010 WL 3607079, at *3, 6 (D. Mass. Sept. 9, 2010) (finding that "awaiting action" status did not amount to an atypical and significant hardship). Under the regulations, prison officials have complete discretion to place inmates on "awaiting action" status during the pendency of a disciplinary proceeding. See 103 C.M.R. 430.21(1); see Hewitt v. Helms, 459 U.S. 460, 468 (1983).

With respect to Howell's transfer to NCCI Gardner, an inmate's reclassification or transfer to another facility does not in itself implicate a liberty interest, even where that transfer results in "the loss of 'access to vocational, educational, recreational, and rehabilitative programs.'" McKune v. Lile, 536 U.S. 24, 39 (2002) (quoting Hewitt, 459 U.S. at 468); see Dominique v. Weld, 73 F.3d 1156, 1160-61 (1st Cir.1996) (finding that the transfer of a prisoner and loss of work release privileges did not constitute a protected liberty interest); Meachum v. Fano, 427 U.S. 215, 224-25 (1976) (rejecting argument that reclassification and transfer of inmate to another institution infringed

---

[6] Since Howell does not allege that the sanctions imposed here created a protected liberty interest under the Massachusetts Constitution, the Court need not reach this question.

a protected liberty interest); Drayton, 52 Mass. App. Ct. at 138-39 (noting that "no due process rights under the state constitution are implicated by the transfer of a prisoner from one facility to another") (citing cases). Moreover, the placement of prisoners within the correctional system is a matter of discretion invoked for various reasons such as security, convenience and rehabilitation. Meachum, 427 U.S. at 228; Jackson v. Comm'r of Corr., 388 Mass. 700, 703 (1983).[7]

Accordingly, for all the aforementioned reasons, the imposition of disciplinary sanctions as well as Howell's reclassification and transfer to NCCI Gardner do not amount to any cognizable deprivation of a liberty interest and thus do not give rise to constitutional due process protections.[8]

In so far as the complaint alleges that the disciplinary report Howell received (outlining the

---

[7]To the extent that Howell claims that his Fifth and Fourteenth Amendment rights were violated when in discussing the disciplinary report, Greer told Howell she would "not go against" her colleagues (Compl. ¶ 28), Greer's comments do not amount to a plausible constitutional violation. The complaint also alleges that Sullivan's failure (as of date of the filing of the second amended complaint) to address his request to investigate the "false allegations" contained in the disciplinary report against Howell, has deprived Howell of his Fifth and Fourteenth amendment rights. (Compl. ¶ 74). Allegedly failing to respond to an inmate's request does not, without more, state a facially plausible claim for a constitutional violation.

[8]In light of the Court's conclusion that Howell has no cognizable liberty interest at stake, the Court need not reach whether he suffered deprivation without due process of law. See, e.g., Martin, 2010 WL 3607079, at *6 (noting that "[t]he absence of a liberty or property deprivation forecloses plaintiff's due process claim") (citation omitted). To the extent that Howell asserts any substantive due process claim, he fails to allege "arbitrary or conscious shocking government action, in a constitutional sense." Espinoza v. Sabol, 558 F.3d 83, 87 (1st Cir. 2008). The disciplinary sanctions imposed upon Howell do not amount to conscious-shocking conduct. See Dutil v. Murphy, 550 F.3d 154, 160 (1st Cir. 2008) (noting that "[a] violation of substantive due process is found when the government's conduct is so 'egregiously unacceptable, outrageous, or conscious shocking' that 'the constitutional line has been crossed'") (quoting Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990)). "A substantive due process claim implicates the essence of state action rather than its modalities; such a claim rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible." Amsden, 904 F.2d at 753. The complaint does not plausibly allege that Defendants' conduct was outrageous or conscious-shocking to state a plausible substantive due process claim.

investigation and charges against him (Compl. ¶¶ 23-27)) somehow violated his due process rights, that report also does not give rise to a protected liberty interest. See, e.g., Sires v. Hefferman, No. 10-11993, 2011 WL 2516093, at *8 n. 6 (D. Mass. June 21, 2011) (citing cases).

### 2. Howell's 42 U.S.C. § 1983 claim

Howell seeks damages and injunctive relief under 42 U.S.C. § 1983. "Section 1983 provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting 'under color'" of state law. Gomez v. Toledo, 446 U.S. 635, 638 (1980) (quoting 42 U.S.C. § 1983). As discussed above, Howell's claims do not involve liberty interests that implicate the constitutional protections of the Due Process Clause. See Sandin, 515 U.S. at 483-84. Thus, he cannot satisfy the first requirement to state a plausible § 1983 claim. Accordingly, Howell's § 1983 claim is dismissed.

### B. Count II: Violation of Massachusetts General Laws c. 265, § 21

Count II alleges that Defendants O'Malley and Malone violated M.G.L. c. 265, § 21 when they "threaten[ed], put [Howell] in fear of [his] life because of his refusal to cooperate with them" and become their informant "resulting in [Howell] being written up." (Compl. ¶ 201). M.G.L. c. 265, § 21, provides in pertinent part:

> Whoever, with intent to commit larceny or any felony, confines . . . injures . . . or attempts or threatens to kill, confine . . . injure . . . or puts any person in fear, for the purpose of stealing from a building . . . or other depository of money, bonds or other valuables, or by intimidation, force or threats compels or attempts to compel any person to disclose or surrender the means of opening any building, bank, safe, vault or other depository of money, bonds, or other valuables, shall whether he succeeds or fails in the perpetration of such larceny or felony, be punished by imprisonment in the state prison for life or for any term of years.

In other words, M.G.L. c. 265, § 21 makes it a crime to confine or put in fear a person for the purpose of committing a larceny or any other felony. In addition to the absence of any allegations that Defendants O'Malley or Malone intended to commit a larceny or any other felony, private persons such as Howell have no standing to bring a cause of action under a criminal statute. "The rights which [the victim of a crime] seeks to enforce criminally are not private but in fact are lodged in the Commonwealth . . . ." Hagen v. Commonwealth, 437 Mass. 374, 380 (2002) (citation omitted). The prosecution of a crime is "conducted in the interests of the Commonwealth, not on behalf of the victim." Id. at 380. Accordingly, Howell cannot state a cause of action under M.G.L. c. 265, § 21.

### C.     Count III:   Violations of the Code of Massachusetts Regulations

Count III alleges that Defendants violated Howell's due process rights with respect to the disciplinary hearings and the investigation of the incident which he claims were not fair and impartial and as a result, violated 103 C.M.R. § 430 and "103 C.M.R. § 426."[9]  The complaint alleges that the hearing officer was not impartial and did not conduct himself in a professional manner in violation of 103 CMR 430.12(2) and (4), among other alleged violations.[10]

In addition to due process rights, "[p]risoners . . . retain other protections from arbitrary state

---

[9]It appears that there is no 103 C.M.R. § 426. See 103 C.M.R. §§ 425.000-429.000 (reserved without text).

[10]Under 103 C.M.R. 430.13(2), a "Hearing Officer shall be impartial. If the inmate challenges the impartiality of the Hearing Officer, the Director of Discipline or a designee shall determine if the inmate has stated substantial reasons to support the claim . . . ." Title 103 of the Massachusetts Code of Regulations, § 430.13(4) provides that, "[a]ll parties, counsel, witnesses and other persons present at a hearing shall conduct themselves in a professional manner consistent with the standards of decorum commonly observed in the courts of the Commonwealth . . . ."

action even within the expected conditions of confinement. They . . . may draw upon internal prison grievance procedures and State judicial review where available." <u>Drayton</u>, 52 Mass. App. Ct. at 139. Thus, even if a plaintiff's challenges do not support a due process claim, a plaintiff has a "remedy for failure to adhere to regulations in prison disciplinary proceedings" under G.L. c. 249, § 4. <u>Ford v. Comm'r of Corr.</u>, 27 Mass. App. Ct. 1127, 1128 (1989) (citing cases); <u>Drayton</u>, 52 Mass. App. Ct. at 139. "Inmates challenging alleged improprieties in prison disciplinary proceedings under Massachusetts law must proceed by way of an action in the nature of certiorari pursuant to Massachusetts General Laws chapter 249, section 4." <u>Martin v. Chavin</u>, No. 08-11971, 2010 WL 3607079, at *8 (D. Mass. Sept. 9, 2010) (citing <u>Murphy v. Superintendent, Mass. Correctional Inst., Cedar Junction</u>, 396 Mass. 830, 833 (1986) (treating inmate's claim as action in the nature of certiorari "even though the complaint speaks in terms of an action for declaratory and injunctive relief")).

Certiorari actions under G.L. c. 249, § 4 must be commenced within sixty days "after the proceeding complained of." G.L. c. 249, § 4. "Failure to do so is such a 'serious misstep' that such an action must be dismissed when not timely filed . . . ." <u>Pidge v. Superintendent Mass. Correctional Inst., Cedar Junction</u>, 32 Mass. App. Ct. 14, 18 (1992); <u>see</u> <u>also</u> <u>Malone v. Civil Serv. Comm'n.</u>, 38 Mass. App. Ct. 147, 151 (1995) (finding that certiorari complaint filed beyond the 60 day period should have been dismissed).

The sixty day statute of limitations period under ch. 249, § 4 begins to run when the "last administrative action is taken by an agency." <u>Committee for Public Counsel Servs. v. Lookner</u>, 47 Mass. App. Ct. 833, 835 (1999). The last administrative action is typically marked by the date the hearing officer issued the final decision. <u>Id.</u> Here, the last administrative action was September 25,

2008, the date on which Howell's administrative appeal was denied. Howell filed his original complaint with this court on August 26, 2009, well beyond the sixty day period. Thus, assuming without deciding that the Court has jurisdiction over the certiorari action, the sixty day statute of limitations under ch. 249, § 4 bars Howell's state claim challenging the disciplinary proceedings.[11] Accordingly, Count III is dismissed.[12]

### D. Count V: Order of Contempt

In Count V, Howell requests that this Court issue an order of contempt against Defendants for their alleged violations of state and federal law. The complaint misunderstands the function of contempt proceedings. Courts recognize two forms of contempt: criminal and civil. Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 826-27 (1994). "Criminal contempt is a crime in the ordinary sense" and may only be imposed if the court provides certain constitutional protections. Id. at 826 (internal quotation marks and citation omitted). By contrast, civil contempt sanctions, "or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary

---

[11]In ruling on a motion to dismiss, the Court may take judicial notice of proceedings and papers filed in other cases or courts if they are relevant to the issues in a matter before the Court. See, e.g., Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) (noting that "[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand"). The Court does so here and notes that Howell filed a complaint seeking review of the same disciplinary proceedings on February 10, 2009 in Suffolk Superior Court. (Def. Memo, Ex. A (docket)). In that case, the defendant moved to dismiss for failure to comply with the sixty day limitations period for actions in the nature of certiorari. (Def. Memo, Ex. A at D. 11). Howell failed to respond to the motion to dismiss and the Court dismissed his complaint without prejudice on August 11, 2009. (Def. Memo, Ex. A at D. 13).

[12]In light of the Court's conclusion that the complaint states no plausible claims under state, federal or constitutional law against Defendants, Count IV (request for declaratory relief) and Count VI (request for money damages) based on those claims are also dismissed.

civil proceeding . . . ." <u>Id.</u> at 827. "For a party to be held in contempt, it must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion." <u>Project B.A.S.I.C. v. Kemp</u>, 947 F.2d 11, 17 (1st Cir. 1991). Under the most liberal reading of the complaint, Howell appears to be seeking an order for civil contempt. However, Howell does not allege, nor could he, that Defendants have violated any order of this Court, since none has been issued. Accordingly, the complaint fails to state a claim under Count V.

## VI. Conclusion

For the foregoing reasons, the Defendants' motion to dismiss pursuant to Rule 12(b)(6) is GRANTED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge
